Filed 5/29/15  Trisha K. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRISHA K.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Real Party in Interest. | F071378<br><br>(Super. Ct. No. 12CEJ300282)<br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Kimberly J. Nystrom-Geist, Judge.

Trisha K., in propria persona for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and David F. Rodriguez, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Detjen, J. and Franson, J.

Trisha K. (mother) seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) following a juvenile court order setting a permanency planning hearing under Welfare and Institutions Code section 366.26 for her four-year-old son Shawn and one-year-old son David.[1]  The juvenile court issued its order after finding, in relevant part, that when David was seven months old, he suffered serious physical harm inflicted nonaccidentally by mother and that both children were at risk of suffering future serious physical harm inflicted nonaccidentally by her.  (§ 300, subd. (a) [abuse].)  Having exercised its dependency jurisdiction over the children on this and other grounds (§ 300, subds. (b) [neglect] & (i) [cruelty]), the court also removed them from parental custody (§ 361, subd. (c)(1)) and denied mother and the children's father reunification services.  In mother's case, the court denied her services on multiple grounds.  (§ 361.5, subd. (b)(6) [infliction of severe physical harm by act or omission of parent] & (13) [parent's history of extensive, abusive and chronic use of drugs and resistance to prior court-ordered treatment].)

Mother does not allege that the juvenile court's orders were erroneous.  At most, she claims in conclusory fashion she never hurt either child.  She also states the children need to be immediately placed with her.  According to mother, Shawn is unhappy and will suffer permanent emotional damage without her.

Mother's petition is inadequate because she fails to raise specific issues and substantively address them.  (§ 366.26, subd. (*l*).)  Even if we were to construe mother's claims as challenges to the juvenile court's jurisdictional findings that mother abused David and both children were at risk of suffering abuse, as well as its decision to remove the children from her custody, we still would conclude those claims are meritless.  We dismiss the petition.

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## PROCEDURAL AND FACTUAL HISTORY

Mother and the children's father have a history of methamphetamine abuse that negatively affects their ability to provide ongoing care and support for the children. As a result, the parents first lost custody of Shawn between 2012 and early 2014. With court-ordered treatment services, including inpatient substance abuse treatment in 2013, the parents eventually reunified with Shawn. However, after dependency jurisdiction was terminated in early 2014, the parents resumed using methamphetamine.

In early October 2014, mother took seven-month-old David with her to an inpatient drug treatment program called WestCare to "detox" from methamphetamine. Mother later claimed she had to take David with her in order to enter WestCare. However, according to other evidence, it was unnecessary.

On the day mother entered WestCare, she seemed very tired and somewhat frustrated with David and was not capable of caring for him. David meanwhile seemed fussy and cried at times.

Later in the day, a resident observed mother shake David two times in a back and forth motion. The infant's head and neck whiplashed back and forth the first time. The resident also heard mother say to David "shut the fuck up, stop crying." The resident went to get a staff member. Upon the resident's return with a staff member, they observed a large bite mark on David's upper left arm. The staff member also saw scratches on David's chest and stomach area. Mother appeared somewhat lethargic and very tired.

When questioned by police as to how David acquired the bite mark and scratches, mother was somewhat unresponsive and confused. She stated she did not know and then asked "did I do that?" adding "I don't know if I did that."

David was taken to a local hospital and examined. There it was determined that David had an adult size "bite" mark about four centimeters in diameter with well-defined indentations of the lower and upper teeth and bruising. He was also found to have a four

3.

centimeter healing linear scar on his abdomen, an old bruise on the inner right arm, an abrasion to his posterior left calf and rash markings on his lower left abdomen and upper left thigh with no rash in the area covered by his diaper.

As a result, David, and later Shawn, were placed in protective custody and the Fresno County Department of Social Services (department) initiated the underlying proceedings. Mother later indicated to the children's relative care provider that she (mother) bit David and that it was to discipline him.

At a contested hearing in the matter, mother testified she did not recall shaking David and knew it was not true. The details of that day were "a little foggy." She also did not recall biting David and did not believe she had done so. She denied telling the relative care provider for the children that she bit David. Mother testified she had no idea how David was injured.

Mother also stated both children had a strong connection with her and that Shawn in particular missed her. He seemed sad towards the end of visits. She thought he was experiencing emotional damage without reunification.

After the matter was submitted, the juvenile court remarked that it found mother's testimony was incoherent and unreliable. Mother's most reliable statement was that the details of the events at WestCare were "foggy." The court gave more weight to mother's statements to police than to her testimony.

It also found some time had passed since David's injuries and mother made essentially no effort to avail herself of community resources so that the children could be safely returned to her care.

## DISCUSSION

The purpose of writ proceedings such as this is to facilitate review of a juvenile court's order setting a section 366.26 hearing to select and implement a permanent plan for a dependent child. (Cal. Rules of Court, rule 8.450(a).) A court's decision is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is up to a

4.

petitioner to raise specific issues and substantively address them. (§ 366.26, subd. (*l*).) This court will not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

As previously noted, mother fails to raise specific issues regarding the juvenile court's findings and orders as well as substantively address them. (§ 366.26, subd. (*l*).) Were we to construe mother's claims as challenges to the sufficiency of the evidence to support: (1) the juvenile court's jurisdictional findings that mother abused David and both children were at risk of suffering abuse; and (2) its decision to remove the children from her custody, we would nevertheless conclude they were meritless.

Although mother states she never bit David, she ignores the rules regarding appellate review. The power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378-1379.) All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the decision, if possible. (*Ibid.*) In addition, we may not reweigh or express an independent judgment on the evidence. (*In re Laura F.* (1983) 33 Cal.3d 826, 833.) In this regard, issues of fact and credibility are matters for the trial court alone. (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860.)

While mother denies harming David, there is conflicting evidence in the record to the contrary. In addition, although mother stands by her word, the juvenile court did not find mother to be a reliable witness. Having reviewed the record as summarized above, we conclude there was substantial evidence to support the juvenile court's jurisdictional findings.

To the extent mother claims the children should be placed with her, she ignores the state of the record and in particular the court's finding that she had made no effort to avail herself of any services so that the children could be safely returned to her care.

5.

Last, while mother claims Shawn in particular will be harmed without her, she presumably relies on her opinion testimony to which the court did not give credence.

## DISPOSITION

The petition for extraordinary writ is dismissed.  This opinion is immediately final as to this court.